**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued September 25, 2024
Decided October 9, 2024

**Before**

MICHAEL Y. SCUDDER, *Circuit Judge*

THOMAS L. KIRSCH II, *Circuit Judge*

NANCY L. MALDONADO, *Circuit Judge*

| | |
|---|---|
| No. 23-3314 | |
| COMEDICA INCORPORATED, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Southern District of Indiana, New Albany Division. |
| *v.* | |
| HILL-ROM SERVICES, INC., *Defendant-Appellee*. | No. 23-cv-00026-TWP-TAB<br><br>Tanya Walton Pratt,<br>*Chief Judge*. |

**O R D E R**

Comedica Incorporated appeals the dismissal of its lawsuit against Hill-Rom Services, Inc. for breach of contract. The district court concluded that Comedica failed to state a claim because it did not plausibly allege that Hill-Rom violated the parties' contractual agreement. On appeal Comedica asserts a new theory of breach. Because Comedica waived any argument under that new theory by not raising it in the district court, we affirm.

# I

## A

In 2005 the owners of Comedica developed the MetaNeb System, a medical device that provides lung-expansion therapy. In 2009 Hill-Rom informed Comedica of its interest in acquiring the rights to MetaNeb and developing the product for use in the post-acute care or home care field. Later that year the parties signed a Business Development Agreement granting Hill-Rom the exclusive right to make and sell MetaNeb. Then in 2014 the parties signed a Post Acute Care License Agreement granting Hill-Rom the right to make, use, and sell Comedica products in the post-acute care field.

The parties' dispute arises out of their conflicting interpretations of the Post Acute Care License Agreement. The Agreement requires Hill-Rom to pay Comedica royalties on "Post Acute Care Net Sales," which it calculates based on "the gross invoiced selling, leasing, or other transfer price of Products in the Post Acute Care Field by Hill-Rom." Post Acute Care Agreement ¶ 3(c); *id.* Ex. A ¶ o. Put another way, the agreement requires Hill-Rom to pay Comedica royalties based on the sale of "Products." In addition, the agreement includes the following relevant definitions:

- "Products" are "the Existing Product, the Post Acute Product, and any other Systems covered by Comedica Intellectual Property that are in full force and effect, … provided, however, that no Systems, including any Existing Product, [or] Post Acute Product … shall be deemed to be a Product unless it is covered by one or more valid claims of Comedica Intellectual Property that are in full force and effect," *id.* Ex. A ¶ s;

- The "Post Acute Product" is MetaNeb "plus additional refinements and enhancements identified by Hill-Rom, if any, for use of the Post Acute Product in the Post Acute Field," *id.* Ex. A ¶ r; and

- "Comedica Intellectual Property" is "Comedica Patents," "Comedica Copyrights," "Comedica Trademarks," "Drawing and Specifications," and "Other Intellectual Property," including "trade secrets, know-how, and knowledge appurtenant to the issued patents and patent applications" listed in the agreement, *id.* Ex. B.

In 2021 Hill-Rom began selling its own lung-expansion therapy device for home use. The device, called Volara, shares many characteristics with MetNeb. After Hill-Rom advised that it did not intend to pay Comedica royalties on sales of Volara,

Comedica initiated this lawsuit under the district court's diversity jurisdiction. See 28 U.S.C. § 1332.

**B**

Comedica's complaint alleged breach of contract under Indiana law. Hill-Rom moved to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Hill-Rom maintained that Comedica's complaint did not state a claim because it did not allege that the new device was "covered by Comedica Intellectual Property"—a necessary condition for meeting the Agreement's definition of a "Product" requiring royalty payments.

In opposing dismissal, Comedica emphasized that the Agreement's definition of "Product" included "the Post Acute Product," which in turn included "refinements and enhancements" of MetaNeb. Relying on that language, Comedica asserted that Volara was a refinement or enhancement of MetaNeb and therefore a "Product." Comedica did not, however, argue that Volara was "covered by Comedica Intellectual Property." Instead, it contended that the phrase "covered by Comedica Intellectual Property" was ambiguous and could be read to include refinements or enhancements not covered by its intellectual property.

The district court disagreed and dismissed Comedica's complaint. The court concluded the primary failure was the absence of any allegation that Volara was "covered by Comedica Intellectual Property." It rejected Comedica's assertion that Volara was a "Product" because it was a refinement or enhancement of MetaNeb. Even assuming Volara was such a refinement or enhancement, the district court explained, the Agreement unambiguously provided that all "Products" requiring royalty payments must be "covered by Comedica Intellectual Property."

The district court initially dismissed Comedica's claims without prejudice and granted Comedica leave to file an amended complaint. After Comedica advised that it did not intend to file an amended complaint, the district court entered a final judgment dismissing Comedica's claims with prejudice. Comedica now appeals.

**II**

In reviewing dismissals under Rule 12(b)(6), we view the complaint in the light most favorable to Comedica, accepting all well-pleaded facts as true and drawing all reasonable inferences in its favor. See *Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501, 504 (7th Cir. 2013). Comedica's complaint can survive a motion to dismiss if it contains enough factual allegations to state a claim for relief that is plausible on its face. See *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Comedica contends for the first time on appeal that Volara is "covered by Comedica Intellectual Property" because it developed out of Comedica's "know-how" or "knowledge." In support of that assertion, it cites the Agreement's definition of "Comedica Intellectual Property," which includes "trade secrets, know-how, and knowledge appurtenant to [Comedica's] issued patents and patent applications." But Comedica has waived the "know-how" or "knowledge" issue by failing to present it to the district court. See *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("Longstanding under our case law is the rule that a person waives an argument by failing to make it before the district court.").

Comedica nevertheless maintains that the "know-how" or "knowledge" issue is properly before us because we can "consider new factual allegations raised for the first time on appeal provided that they are consistent with the complaint." *Highsmith v. Chrysler Credit Corp.*, 18 F.3d 434, 439 (7th Cir. 1994). But Comedica does not assert any new factual allegations on appeal. Instead, it raises a new issue: whether Volara developed out of Comedica's "know-how" or "knowledge." And "[a]lthough we may consider factual allegations raised for the first time on appeal, we ordinarily will not address new *issues*." *County of McHenry v. Ins. Co. of the W.*, 483 F.3d 813, 819–820 (7th Cir. 1994). We decline to address the new issue Comedica raises here—especially in light of the opportunity that the district court gave Comedica to amend its complaint.

Comedica failed to raise in its opening brief any argument that Volara is a "Product" because it is a refinement or enhancement of MetaNeb. It is too late to press that position on appeal. See *White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021) ("A party that omits from its opening appellate brief any argument in support of its position waives or abandons that party's claim on appeal.").

For those reasons, we AFFIRM.